**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| R2 TOP HAT, LTD., | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 06 CV 7929 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| LP, HOME INTERIORS & GIFTS, INC., | § | |
| RICHARD HEATH, PATRICK | § | |
| DAUGHERTY and JOHN DOES 1 through 3 | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO EMERGENCY MOTION**
**FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

**HAYNES AND BOONE, LLP**
153 East 53rd Street
Suite 4900
New York, New York 10022-4636
Telephone:  (212) 659-7300
Telecopier:  (212) 918-8989

**ATTORNEYS FOR DEFENDANTS HOME**
**INTERIORS & GIFTS, INC. AND HIGHLAND**
**CAPITAL MANAGEMENT, L.P.**

## Table of Contents

I.     R2 FAILS TO SATISFY THE REQUIREMENTS TO OBTAIN A PRELIMINARY INJUNCTION. ................................................................................................- 3 -

II.    R2 HAS NOT SHOWN THAT IT WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION. ................................................- 4 -

III.   R2 IS NOT LIKELY TO SUCCEED ON THE MERITS OF ANY OF ITS CLAIMS.- 7 -
    A.     R2'S Breach of Fiduciary Duty Claims Fail as a Matter of Law............................- 7 -
    B.     R2 Has No Standing to Bring Breach of Fiduciary Duty Claims Because Those Claims Are Derivative Claims and Belong to the Company, not R2. ................................- 9 -
    C.     The Decision to Invest the Sale Proceeds in Home Interiors' Business is Protected by the Business Judgment Rule. .......................................................................- 10 -
        1.     R2 Does Not Allege that Highland or Officers and Directors Breached a Duty of Care- 11 -
        2.     R2 Does Not Allege That Highland or The Directors and Officers Breached A Duty Of Loyalty. ........................................................................................- 12 -
    D.     Under the Controlling Law, R2 Mischaracterizes the Fiduciary Duty Owed to Creditors in the Zone of Insolvency ................................................................................- 14 -
    E.     R2's Deepening Insolvency Claims Will Be Dismissed As A Matter Of Law. ......- 15 -
    F.     R2's Claim For Injunction Does Not State A Claim For Relief Or Viable Cause Of Action, But Rather Describes A Remedy. ................................................................- 16 -
    G.     R2 Received Exactly What It Bargained For And Thus There Is No Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim. .......................................- 17 -

IV.    THE BALANCE OF HARDSHIPS STRONGLY SUPPORTS DENIAL OF THE INJUNCTIVE RELIEF.............................................................................................- 19 -

V.     THE TRO ENTERED OCTOBER 3 SHOULD BE VACATED ...............................- 20 -

Defendants Highland Capital Management, LP ("Highland") Home Interiors & Gifts, Inc. ("Home Interiors" or the "Company"), Richard Heath, Patrick Daugherty, and John Does 1 through 3 (collectively the "Defendants") file this Response In Opposition to Plaintiff's Emergency Motion for Preliminary Injunction and Brief in Support and respectfully request that the Court deny the Emergency Motion for Preliminary Injunction and vacate the Court's Temporary Restraining Order for the following reasons:

## PRELIMINARY STATEMENT

R2, the Plaintiff, is a member of the senior secured lender group holding secured debt claims against Home Interiors under a Credit Agreement dated March 31, 2004, which has been amended from time to time. There is no default under the Credit Agreement. Home Interiors is current on its principal and interest payments to all of its secured lenders, including R2. R2 is owed $27.9 million as to the extent due arising from its purchase of a portion of the secured debt under the Credit Agreement. If R2 has good claims against the various Defendants, the claims can be satisfied in full with a money judgment. R2 can never show that it will suffer irreparable injury if a preliminary injunction does not issue. R2 does not come close to meeting the mandatory legal requirements to support a preliminary injunction. R2's efforts to seek a preliminary injunction should be denied.

R2 first sought and obtained an ex parte TRO seizing the Sales Proceeds without notice to the Company or other defendants. That TRO, however, violated various respects of Rule 65(b) in that it did not describe why it was issued without notice or the irreparable injury. Moreover, R2 was not required to and did not post any bond or security for the TRO despite Rule 65(c)'s express requirement of a bond.

R2 now seeks to preliminarily enjoin the Company from the use of its own money without any legal justification.  About $28.5 million cash was realized by the Company from the recent sale of its headquarters building in Texas.  The Company needs this cash to proceed with its turnaround efforts and to pay for obligations incurred in the ordinary course of its business and perhaps to pay for some obligations.  What is most remarkable about this whole litigation is that while seeking to tie up the Company's money,   R2 has not alleged one claim or cause of action against the Company in the Verified Complaint initiating this lawsuit.  Nor has the Plaintiff alleged any basis to hold the Company accountable for the alleged losses caused R2 by the actions of the other Defendants.

In its efforts to obtain a preliminary injunction on the use of the sale proceeds, the Plaintiff is seeking to override the business judgment exercised by the Company's board when it decided to sell its headquarters building and use the proceeds to further its turnaround efforts and pay obligations in the ordinary course of its business.  If these sale proceeds had been distributed to all the lenders under the Credit Agreement, R2 would have received approximately $2.65 million.  However, the Company would suffer draconian consequences if such payments were to occur—it would not have the liquidity to meet its ongoing obligations nor to implement its financial turnaround program.

The Plaintiff's  claims for alleged  breach of fiduciary duty, deepening insolvency, and unjust enrichment (1) are not alleged against the Company; and (2) are not  legally sustainable as a matter of law against the other Defendants and can never support injunctive relief against the Company  and its money.   The Plaintiff has little to no likelihood of success on the merits of its claims.  There are no serious legal or fact questions going to the merits of the claims and the

balance of the hardship arising from the injunction requested tips wholly in favor of the Company.

R2 cannot meet its burden to secure such an extraordinary remedy against the Company's working capital.  If R2 has claims against the various defendants for damages, it should pursue them.   But R2's efforts to obtain a preliminary injunction to enjoin the Company's cash fail and the Court should deny its request.

R2 is clear that it seeks an injunction to compel Home Interiors to wind down operations and to force the bankruptcy of Home Interiors by enjoining the Company from following the decision of its board and advisors in continuing to operate the business in this critical selling season.  R2 wrongfully wants to seize managerial control over the debtor's business through its injunction effort.  Those efforts should be denied, and the existing restraining order vacated.

## I.     R2 FAILS TO SATISFY THE REQUIREMENTS TO OBTAIN A PRELIMINARY INJUNCTION.

R2, as the movant seeking the injunction, bears a heavy burden.  "A preliminary injunction is 'an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Piercy v. Fed. Reserve Bank of New York*, No. 02 Civ. 5005 (DC), 2003 WL 115230, at * 3 (S.D.N.Y. Jan. 13, 2003) (Chin, J.) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (quoting 11A Charles Alan Wright, *et. al*, Federal Practice & Procedure § 2948, at 129-30 (2d ed. 1995)).  To obtain preliminary injunctive relief, the applicant must establish "(1) a threat of irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief."  *Piercy,* 2003 WL 115230, at * 3.  Establishing irreparable harm is "an absolute requirement for a preliminary injunction."  *Id.*

R2's injunction application fails to satisfy all three requirements: R2 is not in danger of any irreparable injury. To the contrary, R2's claims, if any, can be wholly satisfied by a money judgment. Second, R2 is not likely to succeed on the merits of its claims.  Finally, R2's claims do not raise serious questions going to the merits and the balance of hardships actually supports Home Interiors.

## II.    R2 HAS NOT SHOWN THAT IT WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

To establish irreparable harm, R2 must prove "an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *see Goldblatt v. Englander Comm'ns., LLC,* 431 F. Supp. 2d 420, 425 (S.D.N.Y. 2006) ("The law in this circuit requires a showing that irreparable damages are likely, not merely possible.").  Indeed, irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (per curiam).

R2's claim exists because it bought bank debt under the Credit Agreement.  Such claims are compensable in money and monetary damages. Payment of the lenders' claims under the Credit Agreement is full compensation for those claims.  In addition, R2 cannot prove that its claims cannot be satisfied by other defendants' payment of monetary damages.  If monetary damages "are adequate compensation," the Court should not issue a preliminary injunction.  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990);  *Lentjes Bischoff v. Joy Environmental Techs., Inc.*, 986 F. Supp. 183, 185 (S.D.N.Y. 1997) ("[C]ourts should avoid issuing preliminary injunctions in cases where money damages would be adequate compensation."); *Reuters v. United Press Int'l*, 903 F.2d 904, 907 (2d Cir.1990) (holding that to

be considered "irreparable," an injury must "be one incapable of being fully remedied by monetary damages.")

R2 bears the burden of proving that its claims cannot be satisfied with money damages. R2 can never meet this burden in this case. Highland is undeniably solvent, and there is D&O coverage for the directors. Thus, the question is not the collectibility of a judgment from Home Interiors but rather the collectibility of a judgment from all defendants, including Highland and the Directors and Officers. There is no evidence that R2 will be unable to collect a money judgment from Highland or the Directors and Officers, and thus a preliminary injunction should not issue. *See Tucker Anthony Realty Corp.*, 888 F.2d at 975.

As noted earlier, while the face amount of R2's debt may be $27 million, even if it holds 9.3% of the $350 million credit facility, [1] and thus its proportionate share of the Sales Proceeds (9.3% of $28.5 million) calculates to $2.65 million. If the Sale Proceeds are collateral for the Lenders' debt and the Sales Proceeds were distributed to the Lenders, R2 would have received at most $2.65 million in proceeds. R2 would not get all the Sales Proceeds because R2 would never have a claim to more than its *pro rata* share of the collateral, or $2.65 million. Yet R2 seeks to freeze, for its own benefit, the cash collateral of the other lenders' claims. No injunction should issue on the $28.5 million in Sale Proceeds to satisfy a $2.65 million claim on the collateral.

Moreover, there is no evidence other than idle speculation that Home Interiors will not have the ability to fund any judgment. There are no facts to suggest that Home Interiors is about to file for bankruptcy or that any other imminent harm is looming. Indeed, the Complaint alleges that the consequences of the decline are a potential default that may not be waived by the debt

---

[1] R2 actually holds less than 8% of the total existing Credit Facility, in that R2 excluded the $50 million revolving credit portion of the credit facility in calculating its alleged 9.3%.

holders.  Complaint ¶10.  If a waiver is not forthcoming, Home Interiors "**would** likely be unable to pay" its debts and "**may** not be able to obtain additional" credit.  *Id.* (emphasis added); s*ee also* Complaint ¶51 (the Company's "'strategy'" will inevitably lead to" dissipation of assets).  Speculation of future injury will not support an injunction.  *See Great Earth Int'l Franchising Corp. v. Milks Development, Inc.*, 302 F. Supp. 2d 248, 254 (S.D.N.Y. 2004) (irreparable injury not demonstrated where movant argued that current financials were proof of a future inability to satisfy judgments.)

R2's pleadings and moving papers concede that they have no irreparable injury.  Paragraph 28 of its Motion for Temporary Restraining Order admits that R2 will "have a claim for damages after the Sale/Leaseback transaction is completed. . ."  The Sale/Leaseback transaction has now closed.   R2 continues that the claim "may come too late, as there will soon be no cash to satisfy a judgment."  There are no factual allegations as to when the Company's cash will be unable to satisfy a judgment, and R2's fears as to the Company's future cash balance do not justify the issuance of an injunction today. *See Limonium Maritime, S.A. v. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 611 (S.D.N.Y. 1997) (Chin, J.) ("Since Limonium's damages are monetary in nature, and its allegations that defendants are dissipating their assets are speculative at best, Limonium's motion for a preliminary injunction is denied.").

## III.   R2 IS NOT LIKELY TO SUCCEED ON THE MERITS OF ANY OF ITS CLAIMS.

R2's Complaint pleads seven "Counts."  Counts 1 and 2 allege a breach of fiduciary duty by Highland and the Directors and Officers.  Counts 3 and 4 allege "Deepening Insolvency" against Highland and the Directors and Officers. Count 5 alleges that Highland breached an implied covenant of good faith and fair dealing in the Credit Agreement. Count 6 is titled "Injunction" and is the only claim directed at all defendants.  Count 7 alleges unjust enrichment by Highland.

Remarkably, despite the fact that R2 seeks to attach and impound $28.5 million of Home Interiors' corporate funds, it does not allege any claim against the Company.   Perhaps this is because the Complaint does not accuse the Company of any wrongdoing or breach of contract that would provide a basis for any recovery of Home Interiors' funds.  This fundamental flaw should be the end of R2's request for an injunction impounding Home Interiors' assets. *See, e.g., In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir. 1988) ("The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.").

### A.   R2'S Breach of Fiduciary Duty Claims Fail as a Matter of Law.

Under Texas law,[2] to prevail on a breach of fiduciary duty claim, a plaintiff must prove the existence of such a duty, a breach of that duty, causation, and damages. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex.App. 2003).  As a general rule, a company and its board

---

[2] A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  New York courts apply the internal affairs doctrine and consider a corporation's officers and directors' duties and obligations as governed by the corporation's state of incorporation. *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 128-29 (S.D.N.Y. 1999) ("Under New York law, issues relating to the internal affairs of a corporation are decided in accordance with the law of the state of incorporation."); *see also Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2nd Cir. 1980).  Home Interiors is a Texas corporation (Compl. ¶ 11), and thus Texas law governs the duties owed by Home Interiors' Officers and Directors.

"do not owe creditors duties beyond the relevant contractual terms." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. 1992); *Weaver v. Kellogg*, 216 B.R. 563, 583 (Bankr. S.D. Tex. 1997) (Texas and Delaware law).   Under Texas law, "a party who has contracted with a financially weak corporation and is disappointed in obtaining satisfaction of his claim cannot look to the dominant stockholder or parent corporation in the absence of additional compelling facts."  *Tigrett v. Pointer*, 580 S.W.2d 375, 382 (Tex. App. 1978) (compelling facts included fraud, deceit or prejudice to creditors).

To avoid this black letter law, R2 argues that Home Interiors is either insolvent or operating near insolvency, and thus Highland and the Officers and Directors owe fiduciary duties to it.  R2 argues that officers and directors of a corporation in the so-called "zone of insolvency" have expanded fiduciary duties, including a fiduciary duty to creditors to discontinue operations, wind down, and liquidate its assets.

Even if this "zone of insolvency" is found to exist, R2's attempt to expand the  fiduciary duties, however, does not change the fact that the Company and its directors (including Highland and its director nominees) are entitled to the protection of the business judgment rule for decisions made for the Company.  As one of the cases cited by R2, *In re RSL COM Primecall, Inc.,* held:  **"There is no authority that supports Plaintiffs' position that there is a blanket duty to liquidate upon insolvency, un-tempered by the business judgment rule. . . .It has never been the law in the United States that directors are not afforded significant discretion as to whether an insolvent company can 'work out' its problems or should file a bankruptcy petition."** *In re RSL COM Primecall, Inc.*, 2003 Bankr. LEXIS 1635,  at * 25 (Bankr. S.D.N.Y. 2003) ("*RSL*") (emphasis added).  R2 cites no authority for the proposition that the only proper exercise of the director's duty of a corporation in the zone of insolvency is to

liquidate or declare bankruptcy. Given the lack of allegations to rebut the business judgment rule, R2's claims are not likely to succeed on the merits.

**B.      R2 Has No Standing to Bring Breach of Fiduciary Duty Claims Because Those Claims Are Derivative Claims and Belong to the Company, not R2.**

Individual shareholders have no standing to bring claims seeking redress for wrongs done to the corporation or seeking damages caused solely by wrongs done to the corporation. *Redmon v. Griffith*, 2006 WL 870288, at *3 (Tex. App. 2006). Rather, such actions must be brought as derivative suits in the name of the corporation. *Id.* The right to proceed against an officer for breaching a fiduciary duty to the corporation belongs to the corporation itself. *Grinnell v. Munson*, 137 S.W.3d 706, 718 (Tex. App. 2004). In order to bring a derivative suit under Texas law, a party must make a pre-suit demand on the corporation, regardless of whether such demand would be futile. *Equitec-Cole Roesler LLC v. McClanahan*, 251 F. Supp. 2d 1347, 1352 (S.D. Tex. 2003). Once a demand has been made, the corporation's directors, rather than its shareholders, have the right to control the litigation. *Id.* The Complaint does not allege that R2 has made any demand on the Company. Indeed, there is no indication that R2 has even complained to the Company prior to filing suit and obtaining an improper Temporary Restraining Order.

The fact that a creditor's claim for breach of fiduciary duty is derivative was extensively discussed in a recent Delaware Chancery case. In *Production Resources Group, LLC v. NCT Group, Inc.,* the court held that because the recovery rightly belonged to the corporation, the creditor's claim was in fact derivative. *See* 863 A.2d 772, 792 (Del. Ch. 2004).[3] Similarly, any

---

[3]The Delaware Court of Chancery stated: "More to the current point, the transformation of a creditor into a residual owner does not change the nature of the harm in a typical claim for breach of fiduciary duty by corporate directors. Two examples will illustrate this. Assume that a corporation, say an airline, is already insolvent but that it has ongoing operations. A well-pled claim is made by one of the company's many creditors that the directors have

recovery by R2 in this case for breach of duty rightly belongs to the Company. And because R2 has not made a demand that the Company pursue these claims, its Complaint should be dismissed.

>        **C.    The Decision to Invest the Sale Proceeds in Home Interiors' Business is Protected by the Business Judgment Rule.**

Assuming that R2 is owed a fiduciary duty, there was no breach of that duty because the actions R2 complains about are protected by the business judgment rule. The decision to enter into the Sale/Leaseback and the use of the Sale Proceeds as operating capital are the products of business judgments. *See, e.g.*, *Roselink Investors, L.L.C. v. Shenkman*, 386 F.Supp.2d 209, 217 (S.D.N.Y. 2004) (defendants' decision to make a loan constitutes a "business decision" for the purposes of the business judgment rule). Under Texas law, the business judgment rule provides that directors' decisions, no matter how unwise or imprudent, do not constitute a breach of duty if the acts of the directors were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved." *See Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 313-14 (N.D. Tex. 1994) (quoting *Cates v.*

---

engaged in self-dealing. Is this claim a direct claim belonging to the corporation's creditors as a class, or the specific complaining creditor, such that any monetary recovery would go directly to them, or it? I would think that it is not. Instead, because of the firm's insolvency, creditors would have standing to assert that the self-dealing directors had breached their fiduciary duties by improperly harming the economic value of the firm, to the detriment of the creditors who had legitimate claims on its assets. No particular creditor would have the right to the recovery; rather, all creditors would benefit when the firm was made whole and the firm's value was increased, enabling it to satisfy more creditor claims in order of their legal claim on the firm's assets. In other words, even in the case of an insolvent firm, poor decisions by directors that lead to a loss of corporate assets and are alleged to be a breaches of equitable fiduciary duties remain harms to the corporate entity itself. Thus, **regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets.** The reason for this bears repeating-the fact of insolvency does not change the primary object of the director's duties, which is the firm itself. The firm's insolvency simply makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value and logically gives them standing to pursue these claims to rectify that injury. Put simply, when a director of an insolvent corporation, through a breach of fiduciary duty, injures the firm itself, the claim against the director is still one belonging to the corporation." *Prod. Res. Group, LLC*, 863 A.2d at 792. (emphasis added)

*Sparkman*, 11 S.W. 846, 840 (Tex. 1889).[4]   Texas courts will not impose liability upon a noninterested corporate director unless the challenged action is *ultra vires* or tainted by fraud. *Gearhart Industries, Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir.1984).

Thus, to prevail on a breach of fiduciary duty claim which arises from the business decision to invest the Sale Proceeds in Home Interiors rather than distribute them to creditors, R2 will be forced to prove either a breach of the duty of care or duty of loyalty in that the directors were personally interested in the transaction.  *See Gearhart,* 741 F.2d at 719.

> 1.    *R2 Does Not Allege that Highland or Officers and Directors Breached a Duty of Care*

The only decisions of directors not subject to the protection of the business judgment rule are any breaches duty of care that amount to gross negligence.  *Acton*, 844 F.Supp. at 314. Texas law defines gross negligence as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981); *Resolution Trust Corp.,* 44 F. Supp. at 314.  R2 cannot satisfy this legal burden.

There are no allegations suggesting, much less establishing, that the directors' decision to enter into the Sale/Leaseback and to invest the Sale Proceeds was the product of gross negligence.  The decision to enter into the Sale/Leaseback transaction was studied, analyzed and thoroughly discussed by the Board and its officers.  The use of the Sale Proceeds was similarly the subject of months of study, analysis and deliberation.  To confirm this analysis, the Company and directors solicited and received the advice of industry experts on both the Sale/Leaseback

---

[4]See also *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 880 (Tex. App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex. 1983) (under Texas law, courts should be reluctant to interfere with a corporation's internal management); *Conrick v. Houston Civic Opera Ass'n*, 99 S.W.2d 382, 385 (Tex. Civ. App.—Amarillo 1936, no writ) ("If courts of equity are allowed to interfere with the business discretion of the directors of corporations, we venture their entire time would soon be occupied in discharging the duties of this new found guardianship.").

transaction and the use of the Sale Proceeds.   The Company used Transwestern Commercial Services, a noted real estate firm, to provide advice on the Sale/Leaseback  transaction.  The Company also retained various financial consultants to provide financial, operating and restructuring advice and the liquidity and capital resources of the Company were extensively considered and analyzed.  The role of the Sale Proceeds in the Company's financial plans has received significant analysis, and the Company has received the advice of Chanin Partners, a respected financial consultant.  Thus, the Company has extensively analyzed its strategy and that strategy has been discussed with and supported by an independent outside advisor, belying any suggestion of gross negligence.

> ### 2. *R2 Does Not Allege That Highland or The Directors and Officers Breached A Duty Of Loyalty.*

 The only remaining ground for a breach of fiduciary duty claim would be a breach of the duty of loyalty. Under Texas law, a director is considered interested if he or she (1) makes a personal profit from a transaction by dealing with the corporation or usurps a corporate opportunity; (2) buys or sells assets of the corporation; (3) transacts business in his director's capacity with a second corporation of which he is also a director or significantly financially associated; or (4) transacts business in his director's capacity with a family member. See *Gearhart*, 741 F.2d at 719-20; *Resolution Trust Corp. v. Bonner*, 1993 WL 414679, at *2 (S.D.Tex. June 3, 1993).  R2 cannot meet this burden.

The Complaint does not allege (1) that any director stands to profit personally from the Sale/Leaseback or the use of the Sale Proceeds; (2) that any director is buying or selling assets in either transaction; (3) that a director is transacting business in his director's capacity with a second corporation with which he has a significant financial interest; or (4) that a director's family member is involved.  The only conceivable argument is that Highland and its board

designees are somehow "interested" because Highland is both a creditor and an equity holder. But that equity stake does not render a director "interested" and create a breach of duty claim. The business judgment rule protects decisions if the director does not expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all shareholders generally.  *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (explaining "interest" under Delaware law).  Here, Highland benefits in the same manner as all other creditors and shareholders and is thus not interested under *Gearhart* and its progeny.[5]

The Complaint alleges only that Highland "as a majority shareholder" has a vested interest in Home Interiors continued operation. Complaint ¶ 39.  Even if true, this does not render Highland interested under Texas law.  The Complaint then argues that Highland, in its capacity as majority owner of bank debt, directed various waivers and amendments to the Credit Agreement because such amendments inure to its benefit as a shareholder.  Complaint ¶¶40, 43. The Sale Leaseback is also alleged to be part of the breach.  None of this however, casts any doubt on the independence of Highland's business decisions.

Highland will not receive any greater share of the Sale Proceeds than any other secured lender under the Credit Agreement.  If the Sales Proceeds were in fact distributed to the Lenders, Highland will not receive anything beyond what it is contractually entitled to, just as will R2.  As for the argument that Highland, in its role as a creditor, has directed amendments and waivers of the Credit Agreement, that action cannot be the basis of any tort claim by R2. As parties to the Credit Agreement, Highland and R2's relationship as lenders are defined by the Credit

---

[5] Similarly, Highland's or the other Officers and Directors' ownership of stock would not be sufficient to create an inference of fraud or provide scienter for a fraud claim under Rule 9(b).  *See Nathenson v. Zonagen Inc.,* 267 F.3d 400, 420 (5th Cir. 2001); *Schiller v. Physicians Resource Group, Inc.,*  2002 WL 318441, *8  (N.D.Tex. 2002)

Agreement, and that contract sets forth the parties rights and obligations to one another.  The Complaint alleges and acknowledges that Highland can unilaterally waive or amend certain provisions without the consent of the other lenders because it owns a majority of the bank debt. Compl. ¶ 40.  Texas law is clear – the rights of parties to a contract are governed by the contract, and extra-contractual duties are not implied because the parties could have bargained for those duties in their agreement.  *See Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) (holding that conduct that constitutes a breach of contract cannot create tort liability); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618, 29 Tex. Sup. Ct. J. 369 (Tex. 1986) (where parties relationship arises out of contract, parties do not have tort claims against another). [6]

### D.    Under the Controlling Law, R2 Mischaracterizes the Fiduciary Duty Owed to Creditors in the Zone of Insolvency.

Even assuming that the directors' duties extended to creditors, any such expansion did not result in the directors abdicating their fiduciary duty to all other persons.  Rather, the duty expands such that directors must take into account the interests of the creditors as well as the other constituencies.  *See Weaver*, 216 B.R. at 584.  The *RSL* court stated that any applicable fiduciary duties are owed "to the corporation," "and to all of its interested constituencies, including creditors and shareholders."  *In re RSL*, 2003 Bankr. LEXIS 1635 at 25.[7]   The First

---

[6] In any event, R2's theory that Highland is gambling the creditors' money to benefit the equity is illogical. Highland holds over 60% (or nearly $200 million) of the bank debt.  If investment of the Sale Proceeds destroyed value to the bank loan holders, Highland will lose more than $6 dollars for every $1 lost by R2.  If the Company were to enter bankruptcy and the bank loan converted to equity, Highland would own roughly the same percentage of the Company's equity that does now.

[7] The *RSL* court discussed and relied on the Delaware opinion in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 Del. Ch. LEXIS 215, Civ. 12150, 1991 WL 277613, at *34 n. 55 (Del. Ch. 1991) which held "…[w]hen a corporation is 'in the vicinity of insolvency,' the directors owe fiduciary duties to the entire 'community of interests' of those involved with the corporation, including creditors….." While this duty does not necessarily place creditor interests ahead of the interests of stockholders, it requires the board to maximize the

Circuit explained that: "[T]he rights of creditors are involved only where there has been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Martin v. Kagan (In re Tufts Electronics, Inc.)*, 746 F.2d 915, 917 (1st Cir. 1984). Thus, the Company and its fiduciaries are not required or permitted to make decisions based solely on what is best only for the Company's senior secured creditors, but rather all decisions must take into account all constituencies.

R2's zone of insolvency cases actually support Home Interiors' *business decision* to sell the corporate headquarters. *In re RSL*, for instance, held that the fiduciary duty that may flow from the "zone of insolvency" "requires the board to maximize the corporation's long-term wealth creating capacity." *In re RSL*, 2003 Bankr. LEXIS 1635 at *8 (quoting *In re Hechinger Inv. Co. of Delaware*, 274 B.R. 71, 89 (D. Del. 2002)). R2's cases that purport to impose a fiduciary duty on Highland (based on its status) as majority equity holder in the company arise in the context of an actually insolvent or bankrupt company and hold that any duties Highland may have are to all of Home Interiors' stakeholders, not simply to a single creditor, as R² claims. *See* Emergency Motion for Temporary Restraining Order at 10-11.

**E.     R2's Deepening Insolvency Claims Will Be Dismissed As A Matter Of Law.**

Counts 3 and 4 assert a claim for "deepening insolvency." These claims are unsupportable as a matter of law. No Texas court has ever recognized the "deepening insolvency" tort, and the most recent analysis of Texas law on this issue rejected it as an independent cause of action. In *Official Comm. Of Unsecured Creditors of Vartec Telecom, Inc. v. Rural Tel. Finance Coop. (In re Vartec Telecom, Inc.)*, 335 B.R. 631 (Bankr. N.D. Tex. 2005), the bankruptcy court stated:

---

corporation's long-term wealth creating capacity." That is exactly what the board and management at Home Interiors is currently trying to do: "maximize the corporation's long-term wealth creating capacity."

> [T]he Court finds that the Texas Supreme Court would not adopt "deepening insolvency" as a separate tort, because the injury caused by the deepening of a corporation's insolvency is substantially duplicated by torts already established in Texas.  Further, as the case law in this area has shown, for a plaintiff to assert a valid claim for damages under a theory of "deepening insolvency" the plaintiff must show that the defendant has committed some other tort. "Put more bluntly, if you honestly treat deepening insolvency as a tort, it collapses into already existing torts, be it a breach of fiduciary duty (*Del-Mar*) accounting malpractice (*Parmalat*) or some other cause of action.

335 B.R. at 644 (footnotes and internal citations omitted).  The court concluded that a majority of decisions that have addressed deepening insolvency have concluded it is "simply a measure of damages or a breach of tort that has already been established." *Id.*

Here, R2's sole independent tort theory is breach of fiduciary duty.  R2 thus must show that it can prevail under its fiduciary duty claim.  *See id*. at 646.  For the reasons discussed above, R2's fiduciary duty claim is both a derivative claim that R2 lacks standing to bring and a claim for which R2 cannot overcome the business judgment rule.  Consequently, R2 cannot demonstrate any likelihood of success on the merits with respect to its deepening insolvency claims.

### F.    R2's Claim For Injunction Does Not State A Claim For Relief Or Viable Cause Of Action, But Rather Describes A Remedy.

Count 6 purports to bring a claim for "Injunction" and basically restates the legal prerequisites to obtain an injunction.  *See* Compl. ¶¶ 76-79. But an injunction is not a separate claim or cause of action but rather a remedy.  *Leadsinger, Inc. v. Cole*, 2006 U.S. Dist. Lexis 55638 (S.D.N.Y. 2006).  There is no "injunctive" cause of action under New York or federal law.  *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) (permanent injunction sought).  An injunction is a form of relief that is available only if a plaintiff cannot be compensated for a defendant's allegedly wrongful conduct by a remedy at

law.  *Oxyn Telecomms., Inc. v. ONSE Telecom*, 2003 U.S. Dist. LEXIS 17371 (S.D.N.Y. 2003).

Count 6 does not state a claim for relief, but rather a potential remedy for some other claim.

### G. R2 Received Exactly What It Bargained For And Thus There Is No Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim.

R² asserts that Highland violated an implied covenant of good faith and fair dealing[8]

because it allowed waivers of financial covenants and reporting requirements contained in the

agreement.  Compl. ¶ 72.  R2 also alleges that Highland, as a holder of more than 50% of the

bank debt could unilaterally waive or amend certain provisions of the Credit Agreement. Compl.

¶ 41.  R2's allegations are irreconcilable and simply complain about the bargain R2 struck rather

than state a cause of action. As alleged, Highland and R2 are both Lenders under the Credit

Agreement, which articulates the rights and obligations of the parties thereunder.  The Credit

Agreement grants the "Required Lenders" the ability to make waivers and amendments.

Highland purchased an amount of the bank debt such that its vote was determinative on issues

that needed Required Lenders approval.  Highland paid over $200 million to acquire this right,

and that right is part of its bargain.  R2, on the other hand, purchased 9.3% of the company's

senior secured debt, which position did not allow it to act as the Required Lenders.  R2 cannot

undo its contractual bargain simply because Highland exercised its bargained-for rights.

New York law forecloses R2's claim.  As a Lender under the Credit Agreement,

Highland has very limited obligations to other lenders and none with respect to voting on

waivers or amendments.  Thus, Highland has no express or implied duty to R2 with respect to

waivers under the agreement.  *Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566, 567 (1978)

(implied duty of good faith and fair dealing runs from the promisor to the promisee – i.e., the

---

[8] This claim is governed by New York law because of the choice-of-law provision contained in the Credit Agreement.  Texas law does not recognize a covenant of good faith and fair dealing in the ordinary contractual setting.  *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983).

contracting parties); *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 534 (S.D.N.Y. 1996) (holding that the absence of a contractual relationship bars a claim for breach of the duty of good faith and fair dealing).  Highland bargained for the unilateral right to seek and obtain a waiver of compliance from the Administrative Agent, while R2 did not bargain for any right of control over obtaining such waivers.

R2 seeks rights it does not have and to impose obligations contrary to those in the plain language of the contract.  The implied covenant of good faith and fair dealing does not create obligations beyond those stated in the contract itself. *Don King Prods, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) ("The implied covenant does not . . . operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for rights.").  Similarly, this implied covenant prohibits the creation of obligations "that would be inconsistent with other terms of the contract."  *Times Mirror Magazines, Inc. v.  Field & Stream Licenses Co.*, 294 F.3d 383, 394 (2d Cir. 2002).

Highland has no obligation to R2 to act or vote on waivers and amendments as R2 would have liked.   The covenant of good faith and fair dealing "does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's anticipated fruits from the contract."  *M/A-COM Security Group v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (quoting *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 281 N.E.2d 142, 145 (1972).  R2 got exactly what it bargained for – 9.3% of the debt that did not allow it to dictate corporate affairs.  *Interallianz Bank AG v. Nycal Corp.*, No. 93 CIV. 5024 (RPP),1994 WL 177745, at * 8 (S.D.N.Y. 1994) (the duty of good faith and fair dealing arises "only out of the known reasonable expectations of the other party which arise out of the

agreement entered into"). For these reasons, R2's breach of good faith and fair dealing claim cannot support the issuance of a preliminary injunction.

### D.    R2's Unjust Enrichment Claim Fails As A Matter Of Law.

R2 asserts a claim for unjust enrichment against Highland.   Under Texas law, unjust enrichment is an equitable principle that applies when a party receives benefits under an implied or quasi-contract, but fails to pay for them or to make restitution, so that it would be unjust to retain benefits for which it had not paid.  *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App. 1987).[9]  A  party asserting an unjust enrichment claim must show that the defendant wrongfully received a benefit from the plaintiff that would be unconscionable to retain.  *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265 (Tex. App. 2004).  There is no dispute that Highland has paid for any benefits it obtained from its status as majority debt and equity holder.  The $28.5 million Sale Proceeds and Sale/Leaseback benefits the corporation and *all* of its stakeholders, not just Highland.  R2 does not allege and cannot prove any benefit from these transactions that went to Highland.

## IV.    THE BALANCE OF HARDSHIPS STRONGLY SUPPORTS DENIAL OF THE INJUNCTIVE RELIEF.

The balance of hardships inquiry asks "which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided."  *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999).  The purpose of a preliminary injunction is to preserve the status quo pending a trial on the merits.  *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 692 (2d Cir. 1998).

---

[9] New York law is similar.  To recover under a theory of unjust enrichment, the claimant must prove the following: "(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 108 (N.Y. App. Div. 2002).

In this case, R2 is clear: R2 wants an injunction to force Home Interiors to "discontinue" business operations, wind down its affairs, and return Home Interiors' assets to creditors. Complaint ¶ 7.   Thus, R2 seeks to freeze $28 million in the company's capital, force the shutdown of the business and possibly require a bankruptcy filing.  That is not the status quo, and such a court imposed result would be disastrous for Home Interiors, its employees, shareholders and creditors.  Home Interiors will present evidence at the Preliminary Injunction Hearing that the Company has implemented a series of plans to turnaround the business and that those plans have been carefully prepared, studied and implemented.  The Sale/Leaseback and the use of the Sale Proceeds as working capital to fund this re-launch of the business are critical to its success.  Freezing those funds now would jeopardize the strategy of the company in working its way back to profitability.  The harm to the Company would be staggering, and R2 cannot prove otherwise.

## V.   THE TRO ENTERED OCTOBER 3 SHOULD BE VACATED

As previously noted, the TRO was entered by the Court without notice to the defendants. Because of that lack of notice, Rule 65(b) required that R2 submit facts by affidavit or otherwise demonstrating why irreparable injury will result before defendants' counsel could be heard in opposition to R2's application.  R2's complaint does not address why the defendants could not be given an opportunity to be heard or what irreparable injury would have occurred.  R2 was also required that Plaintiffs' counsel certify to the Court in writing the efforts it had made, if any, to provide notice to the defendants and the reasons why that notice should not be required.  No such certification was made.  The TRO itself was required to state "why the order was granted without notice. . ."  It did not.  The TRO also was required to define R2's injury and state why it is irreparable.  The TRO does not mention R2's injury, much less indicate why it is irreparable.  In addition, the TRO also violated Rule 65(c) in that R2 was not required to post any bond or

security.  There is nothing in any of the moving papers, Complaint or the TRO itself that indicates that the Court considered the appropriate amount of security that would adequately compensate the Company for a wrongful injunction.

The TRO should be vacated because it does not satisfy Rule 65.  Rule 65's requirements are not mere niceties, but strongly worded, mandatory provisions that must be scrupulously observed.  *Austin v. Altman,* 332 F.2d 273, 275 (2d Cir. 1964); *see also Emery Air Freight Corp. v. Local 295*, 449 F.2d 586, 591 (2d Cir. 1971) (court "frowned upon temporary restraining orders issued without even telephoned notice. . ."). Indeed, it is "very rare indeed" when an *ex parte* injunction is appropriate.  *See Biehunik v. Felicetta*, 441 F.2d 228, 229 n.2 (2d Cir. 1971) ("very rare indeed when the issuance of such an order without notice will be justified since normally, within a brief period of time and without much difficulty, the opposing parties and their counsel can be notified of the application by telephone. . ."). Thus, The TRO is invalid and should be vacated.

## CONCLUSION AND REQUEST FOR RELIEF

For these reasons, Defendants respectfully request that the Court vacate the Temporary Restraining Order, deny R2's preliminary injunction request, and award Defendants any other relief to which they are justly entitled.

Dated: October 10, 2006.

Respectfully submitted,

_____

Brian D. Hail (BH-1857)
**HAYNES AND BOONE, LLP**
153 East 53rd Street
Suite 4900
New York, New York 10022-4636
Telephone:  (212) 659-7300
Telecopier:  (212) 918-8989

**ATTORNEYS FOR DEFENDANTS HOME
INTERIORS & GIFTS, INC. AND HIGHLAND
CAPITAL MANAGEMENT, L.P.**

N-3165_6.DOC